IN THE COMMONWEALTH COURT OF PENNSYLVANIA

County of Northampton,       :
           Petitioner       :
                       :    No. 1476 C.D. 2016
      v.                 :
                       :    Submitted: January 20, 2017
Workers' Compensation Appeal       :
Board (Werkheiser),       :
           Respondent       :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE JAMES GARDNER COLINS, Senior Judge

*__OPINION NOT REPORTED__*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                     FILED: May 9, 2017

County of Northampton (Employer) petitions for review of the August 17, 2016, order of the Workers' Compensation Appeal Board (Board) affirming the decision of the Workers' Compensation Judge (WCJ) granting the review petition of Brenda Werkheiser (Claimant), granting in part Claimant's claim petition, and denying Employer's termination petition.

**Facts and Procedural History**

While Claimant was working for Employer as a part-time dietary assistant on October 18, 2013, she was injured as she lifted dishes off a conveyor belt and into a dishwasher. Employer accepted the injury by means of notice of temporary compensation payable (NTCP) (medical only), accepting an injury of

"right elbow strain." (WCJ's Findings of Fact Nos. 3, 6, 7; Reproduced Record (R.R.) at 339-41.)

Employer had accepted a "medical only" claim, but because Claimant was alleging wage loss as well as an incorrect description of the work injury, she filed two petitions. The first was a claim petition, in which she alleged an injury of "right elbow extensor tendon tear, right shoulder, right wrist tendonosis, [and] cervical disc protrusions." Her second petition was a review petition, filed to reflect wage loss and the expanded work injury alleged by Claimant. Employer filed timely answers denying all material allegations. (WCJ's Findings of Fact Nos. 1, 4; R.R. at 6-12.)

Employer filed a termination petition alleging full recovery as of May 8, 2014. Claimant filed an answer denying all material allegations. (WCJ's Findings of Fact Nos. 1, 4; R.R. at 13-16.) The matters were consolidated for purposes of adjudicating all the petitions. (R.R. at 39.)

Claimant testified before the WCJ at two hearings, on June 10, 2014, and September 30, 2014. At the June 10, 2014, hearing she testified that she was hired by Employer on August 19, 2013, as a part-time dietary assistant, which required her to work a food line serving over six hundred patients at a county nursing home, and then clean up after the meal and work the dish cleaning line. Claimant testified that her work required her to be on her feet and involved extensive bending, stretching, pulling, lifting, and pushing. (WCJ's Findings of Fact No. 6.)

Claimant testified that on October 18, 2013, she began getting food and cups ready for the evening meal, and then performed some cleanup before she commenced work on a conveyor belt, loading dishes into an industrial dishwasher. She testified that she lifted the dishes off the belt and placed them in the dishwasher, twisting in all directions while lifting as well. She testified that she was lifting more than a usual meal involves on that date, so that she received help from a co-worker. Claimant testified that the incoming dishes were stacked very high, so that she had to

2

lift them over other stacks of dishes to hand them to her co-worker. Claimant approximated the weight of each stack of dishes to be 25 or 30 pounds. Claimant completed her shift and went home, and went to bed. When she awoke the next morning, she testified that she was in extreme pain on the left side of her neck, with pain shooting over to her right shoulder and down her right arm into her knuckles. (WCJ's Findings of Fact No. 7.)

With the onset of this pain, Claimant testified that she was uncertain what to do. She called her supervisor, and was advised to come to work to complete paperwork. She did so, and testified that she told the supervisor that she was in too much pain to work that day. Her supervisor told her to go to a hospital, and Claimant testified she went to St. Luke's North, where an emergency room physician provided her with a medical excuse from work and placed specific restrictions on her right upper extremity, namely, no lifting, pushing or pulling more than two pounds; no pinching, hard grasping, or fine manipulation; no use of her arm for repetitive motion; no overhead work; and no reaching more than 33 percent of her time. (R.R. at 59-61, 263.) Claimant testified that she faxed those restrictions to Employer's dietary kitchen. Claimant then testified that Employer initially told her it did not have work available within those restrictions, but later provided her with a job answering telephones at a nursing station for three hours a day, three days a week. She testified that her pain continued and was not improving, so that she told Employer's case manager that she was having difficulty performing the job on the phones at the nursing station. Claimant ceased working the modified job at the nursing station on December 23 or 24, 2013. She testified that she subsequently saw another physician on January 8, 2014, who provided restrictions but declined to take her off work altogether, and she faxed these restrictions to Employer's dietary kitchen. Claimant testified that she heard nothing from Employer in response. (WCJ's Finding of Fact No. 8.)

3

On January 10, 2014, Employer sent Claimant a letter warning her that because she had had no contact with Employer since December 24, 2013, and remained absent from work, that therefore, "If you do not contact us within ten (10) business days of the date of this letter, we will consider your actions to be abandonment of job and accept that as your voluntary resignation. . . ." (R.R. at 259.) Claimant admitted receiving Employer's letter but said she disagreed with it because she had already faxed over her medical restrictions. She testified that she voiced this disagreement in a telephone call to Employer's human resources office. (R.R. at 62.) On January 24, 2014, Employer sent Claimant a letter terminating her employment, which she admitted receiving. (R.R. at 260, 96.) Claimant testified that she did not believe she was capable of performing her pre-injury job and that she had had no problems with her right arm before the work injury. (WCJ's Finding of Fact No. 9.)

Claimant alleged that she sustained wage loss as follows: (1) total disability benefits from October 19, 2013, through October 24, 2013, (2) partial disability benefits from October 25, 2013, through December 24, 2013, and, (3) total disability benefits from December 25, 2013, through the present. (R.R. at 43.)

In a deposition taken on July 16, 2014, Claimant submitted the medical testimony of Brett Godbout, M.D., a board-certified orthopedic surgeon who testified regarding Claimant's complaints of pain in her right shoulder and right elbow. Dr. Godbout first saw Claimant on April 15, 2014. He testified that his initial examination focused on Claimant's right upper extremity. He testified that Claimant had pain in her right shoulder and right elbow. He ordered an MRI of Claimant's right shoulder, which showed impingement syndrome, "rotator cuff tendonitis [*sic*]," bursitis, and an inflammation of the biceps tendon. (WCJ's Finding of Fact No. 11.) A post-MRI examination confirmed these diagnoses along with lateral epicondylitis. He testified that Claimant's symptoms were aggravated by her work, and after minimal improvement from conservative treatment, he performed a lateral

4

epicondylar release of Claimant's right elbow on June 13, 2014. Dr. Godbout testified that her work duties either caused or aggravated the problems in Claimant's right upper extremity. He further testified that he never had Claimant off work completely until after the surgery. Dr. Godbout last examined Claimant on June 24, 2014, and although she was improving with physical therapy, she continued to need treatment for the right shoulder. *Id.*

On September 30, 2014, in support of its case, Employer offered the testimony of Edna Younger, a Risk Management Coordinator and Investigative Nurse for Employer. Ms. Younger testified that she made Claimant aware of the modified job answering the phones in the nursing department. She also testified that Claimant received a ten-day warning letter indicating that Claimant's job was in jeopardy and a termination letter ending Claimant's employment with Employer. (WCJ's Finding of Fact No. 10.)

In a deposition taken on November 6, 2014, Employer submitted the medical testimony of Scott Naftulin, D.O., board certified in physical medicine and rehabilitation. Dr. Naftulin examined Claimant once at the request of Employer, on May 8, 2014. (R.R. at 272-275.) He testified that Claimant's only injury was a right elbow strain and that the right epicondylar release was not related to the work injury. He testified that Claimant was fully recovered from any and all injuries suffered at work on October 18, 2013. (WCJ's Finding of Fact No. 12.)

In his decision, the WCJ found Claimant credible because it was clear she had suffered more than "just a right elbow strain." He found that Claimant "suffered a right lateral epicondylitis of the right elbow for which she underwent surgery and a right shoulder impingement with subacromial bursitis and rotator cuff tendonitis [*sic*]." (WCJ's Finding of Fact No. 13.) The WCJ found Dr. Godbout more credible than Dr. Naftulin because the former was a board-certified orthopedic surgeon who has maintained ongoing treatment of Claimant, as opposed to a single

examination, and whose clinical findings were consistent with the findings in the diagnostic studies. Additionally, Dr. Godbout performed the actual surgery on Claimant's right elbow and was aware of Claimant's work with Employer and the salient circumstances of Claimant's work injury. The WCJ found it "significant that Dr. Godbout continues to find impingement findings when he examines Claimant's right shoulder." (WCJ's Findings of Fact Nos. 13-14.)

The WCJ found Claimant credible when she testified that Employer had no work for her within her restrictions until she returned to work at the modified job, answering phones in the nursing department. Nonetheless, the WCJ did not accept all of Claimant's contentions, having found, "As to any wage loss benefits between October 25, 2013, and June 12, 2014, the day before Claimant's surgery, this Judge finds the Claimant has not submitted any credible or competent evidence establishing that her loss of earnings during this period was due to the work injury." The WCJ also found Dr. Godbout's testimony credible that on and after June 13, 2014, the date of Claimant's surgery, Claimant was unable to work at all. (WCJ's Finding of Fact No. 14.) Accordingly, the WCJ granted the review petition in full but only granted the claim petition as follows: (1) Claimant was awarded total disability benefits from October 19, 2013, through October 24, 2013, and, (2) Claimant was awarded total disability benefits from June 13, 2014, "to the present and ongoing." (WCJ's Conclusion of Law No. 3.) The WCJ denied Employer's termination petition.

Employer appealed to the Board, which affirmed the WCJ. In its opinion, the Board acknowledged the conflict in evidence but found that what Employer really sought was a reassessment of the credibility determinations of the WCJ. It rejected Employer's argument that Dr. Godbout testified equivocally. Rather, the Board concluded:

> . . . the facts which constitute the accepted medical history, providing the foundation for an unequivocal

6

medical opinion, are based upon the WCJ's credibility determinations concerning the evidence presented, and here we see no indication that the WCJ accepted Claimant's testimony that she did not experience any pain while she was working on October 18, 2013, but that he only accepted her testimony concerning the duties she was performing on October 18, 2013.

(Board op. at 12.)

Employer filed a petition for review with this Court.[1] Employer identifies three issues on appeal: (1) the WCJ's grant of Claimant's petitions was not supported by substantial evidence and constituted capricious disregard of material evidence by the WCJ[2]; (2) Claimant's purported abandonment of the modified job warrants a suspension of benefits; and, (3) the WCJ's denial of Employer's termination petition was not supported by substantial evidence.

## Discussion

In a workers' compensation proceeding, the WCJ is the ultimate fact finder and is the sole authority for determining the weight and credibility of evidence. *Lombardo v. Workers' Compensation Appeal Board (Topps Company, Inc.)*, 698 A.2d 1378, 1381 (Pa. Cmwlth. 1997). "As such, the WCJ is free to accept or reject

---

[1] Our scope of review is limited to determining whether Findings of Fact are supported by substantial evidence, whether an error of law has been committed, or whether constitutional rights have been violated. Section 704 of the Administrative Agency Law, 2 Pa.C.S. §704; *Meadow Lakes Apartments v.* Workers' Compensation Appeal Board (Spencer), 894 A.2d 214, 216 n.3 (Pa. Cmwlth. 2006).

[2] If raised by a party, allegations of capricious disregard must be addressed by the court. *Leon E. Wintermyer, Inc., v. Workers' Compensation Appeal Board (Marlowe)*, 812 A.2d 478, 487-488 (Pa. 2002). As the Board aptly noted, where there is substantial evidence to support the WCJ's findings, there is no indication of capricious disregard of the evidence. (Board op. at 12, citing *Williams v. Workers' Compensation Appeal Board (USX Corporation—Fairless Works)*, 862 A.2d 137, 144 (Pa. Cmwlth. 2004), for the proposition that "an express consideration and rejection of evidence, by definition, is not capricious disregard.")

the testimony of any witness, including medical witnesses, in whole or in part." *Id.* The WCJ's findings will not be disturbed on appeal when they are supported by substantial, competent evidence. *Greenwich Collieries v. Workmen's Compensation Appeal Board (Buck)*, 664 A.2d 703, 706 (Pa. Cmwlth. 1995). "Substantial evidence is such relevant evidence which a reasonable mind might accept as adequate to support a finding." *Berardelli v. Workmen's Compensation Appeal Board (Bureau of Personnel, State Workmen's Insurance Fund)*, 578 A.2d 1016, 1018 (Pa. Cmwlth. 1990).

Moreover, where both parties present evidence, it is irrelevant that the record contains evidence which supports a finding contrary to that made by the WCJ; rather, the pertinent inquiry is whether evidence exists that supports the WCJ's findings. *Hoffmaster v. Workers' Compensation Appeal Board (Senco Products, Inc.)*, 721 A.2d 1152, 1155 (Pa. Cmwlth. 1998).

Additionally, on appeal, all inferences drawn from the evidence shall be taken in favor of the party prevailing before the WCJ. *Krumins Roofing and Siding v. Workers' Compensation Appeal Board (Libby)*, 575 A.2d 656, 659 (Pa. Cmwlth. 1990).

A petition to modify a notice of compensation payable (NCP) to add an injury or body part not previously accepted by the employer functions as, and carries the same burdens of proof as, a claim petition. *Westinghouse Electric Corporation/CBS v. Workers' Compensation Appeal Board (Korach)*, 883 A.2d 579, 592 (Pa. 2005). In cases where the employer recognized an injury in a medical-only NCP, and the claimant alleges a work-related disability arising from that injury, if the claimant files a claim petition, he or she has the burden to establish, by competent medical evidence, that the recognized condition has resulted in disability. *Ingrassia v. Workers' Compensation Appeal Board (Universal Health Services, Inc.)*, 126 A.3d 394, 401-02 (Pa. Cmwlth. 2015).

In the present case, Claimant's review petition sought to expand the accepted work injury to include the diagnoses found by Dr. Godbout, who was found credible by the WCJ. The WCJ found it persuasive that Dr. Godbout found no disabling physical problems prior to the work injury, and that he demonstrated an understanding of Claimant's job. Following MRIs and the failure of conservative treatment, Dr. Godbout performed a lateral epicondylar release with an anconeus transfer. Further, the WCJ found it important that Dr. Godbout had examined Claimant multiple times and that he had placed Claimant on sedentary work restrictions prior to the surgery but took her off work completely from the date of the surgery and into the future. Although Claimant improved with physical therapy, Dr. Godbout testified that Claimant had not fully recovered from the work injury. Dr. Godbout testified that Claimant's physical problems and resulting disability were either caused by or aggravated by Claimant's work. (R.R. at 201, 206-207, 208-209, 213-215, 226-227, 233, 235.)

Claimant's claim petition sought ongoing total disability benefits. The WCJ declined to grant or reject all the petitions in whole but rather granted Claimant's claim petition only in part, finding Claimant totally disabled only from October 19, 2013, through October 24, 2013 (the day after the work injury up through the day before Claimant offered no competent evidence her lost wages were the result of the work injury), and from June 13, 2014 (the date of the surgery performed by Dr. Godbout), to the present and ongoing. (WCJ's Finding of Fact No. 15 and Conclusion of Law No. 3.)

The Board found that the WCJ did not err regarding the grant of Claimant's claim and review petitions because he had accepted Dr. Godbout's testimony to the effect that Claimant had "sustained injuries including right elbow lateral epicondylitis for which she underwent surgery and a right shoulder impingement with subacromial bursitis and right rotator cuff tendonitis [*sic*],

9

resulting in disability." (Board op. at 12.) The Board also noted that the WCJ additionally accepted the findings and conclusions of Dr. Godbout over those of Dr. Naftulin, and it rejected the attempt by Employer to re-litigate the medical issues in the case. *Id.* at 12-13. We agree.

The WCJ found as a matter of fact that Employer did not have work available to Claimant within her restrictions until October 25, 2014, when Claimant began answering the phones in the nursing department. (WCJ's Finding of Fact No. 14.) The WCJ also found that due to the work injury, on and after June 13, 2014, Claimant was physically unable to perform any work, whether the pre-injury job or the modified job in the nursing department. *Id.* Both findings were based on competent evidence that the WCJ found credible, namely, Dr. Godbout's testimony that the disability resulting from the work injury took Claimant off work completely following the surgery on June 13, 2014. (R.R. at 213-214, 233, 235.)

Nevertheless, Employer argues that Claimant abandoned the modified job for what it labels "non-disabling non-work-related conditions." (Employer's amended brief at 40.) Claimant had sought benefits from the date of the work injury up through the present. The WCJ rejected both arguments, finding instead that although Claimant presented no evidence of work-related disability from October 25, 2013, through June 12, 2014, she offered the credible testimony of Dr. Godbout to the effect that Claimant was unable to perform even the modified job from the date of her surgery on into the future.

Where a WCJ accepts the evidence that an injured worker still suffers ongoing, disabling pain from the work injury, despite contrary evidence offered by an employer, "then the claimant's disability has not ceased." *Moltzen v. Workmen's Compensation Appeal Board (Rochester Manor)*, 646 A.2d 748, 750 (Pa. Cmwlth. 1994).

10

Accordingly, the WCJ did not err in rejecting the suspension based on the modified job in the nursing department. Substantial competent evidence supports the finding of the WCJ in this regard.

Regarding the denial of Employer's termination petition, as our Supreme Court has held:

> We must keep in mind that the employer bears the burden of proof in a termination proceeding to establish that the work injury has ceased. In a case where the claimant complains of continued pain, this burden is met when an employer's medical expert unequivocally testifies that it is his opinion, within a reasonable degree of medical certainty, that the claimant is fully recovered, can return to work without restrictions and that there are no objective medical findings which either substantiate the claims of pain or connect them to the work injury. If the WCJ credits this testimony, the termination of benefits is proper.

*Udvari v. Workmen's Compensation Appeal Board (USAir, Inc.)*, 705 A.2d 1290, 1293 (Pa. 1997).

In the present case, the WCJ rejected the testimony of Employer's examining doctor in favor of Claimant's treating doctor. Here, Dr. Godbout testified specifically that Claimant was not fully recovered from the work injury. (R.R. at 215.) The Board found that the WCJ made his rulings based on an assessment of credibility, finding the testimony of Dr. Godbout more credible than that of Dr. Naftulin, and that Dr. Godbout's testimony was competent and more than sufficient to support a finding that Employer did not meet its burden of proving the full recovery necessary to secure a termination of workers' compensation benefits. (Board op. at 13.) We agree.

11

## Conclusion

The WCJ accepted the testimony of Dr. Godbout as credible and persuasive. Dr. Godbout clearly stated the nature of the work injury, that it was caused by work for Employer, and that disability was ongoing. Hence, the Board did not err in affirming the WCJ's decision granting Claimant's review and claim petitions and denying Employer's termination petition.

Accordingly, the order of the Board is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge

12

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

County of Northampton,          :
         Petitioner       :
                       :   No. 1476 C.D. 2016
        v.             :
                       :
Workers' Compensation Appeal  :
Board (Werkheiser),        :
         Respondent    :

## ***ORDER***

AND NOW, this 9th day of May, 2017, the order of the Workers' Compensation Appeal Board, dated August 17, 2016, is hereby affirmed.

_____
PATRICIA A. McCULLOUGH, Judge